IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACHARY J. BAGDON, <br> Plaintiff, | : <br> : <br> : | |
| v. | : | Civil No. 2:20-cv-00446-JMG |
| BANK OF AMERICA CORPORATION, <br> Defendant. | : <br> : <br> : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                            September 30, 2021

**I.      OVERVIEW**

After retiring due to a physical disability, Plaintiff Zachary Bagdon learned that his disability benefit payments would be much smaller after taxes than he had expected. Plaintiff believed he would receive the substantial majority of his benefit payments tax-free, only to find out upon his retirement that the majority of his benefit payments would be taxed. Plaintiff claims he is entitled to greater after-tax payments either under the terms of Defendant's employee benefits program or based upon the repeated assurances he received from Defendant's human resources representatives. Seeking relief, Plaintiff sued Defendant alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and demanding a jury trial. After the close of discovery, Defendant moved for summary judgment on all counts and to strike Plaintiff's demand for a jury trial. After reviewing Defendant's motions, Plaintiff's response, and Defendant's reply thereto, the Court concludes that only Plaintiff's second theory of his entitlement to greater benefit payments can survive summary judgment. Accordingly, the Court grants Defendant's motion for summary judgment in part and grants Defendant's motion to strike, as explained further below.

## II. FACTUAL BACKGROUND

### a. Allegations

Plaintiff Zachary Bagdon worked for Defendant Bank of America until 2016. Def.'s Statement of Facts ("DSOF") ¶ 38, ECF No. 31-2; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("PRSOF") ¶ 38, ECF No. 35-1. While Plaintiff was working for Defendant, he enrolled in a long-term disability ("LTD") insurance plan through Defendant's employee benefits program (the "Plan"). DSOF ¶ 10; PRSOF ¶ 10.

Defendant's Plan offered employees a variety of LTD policies to choose from, each of which came at a different cost to employees. DSOF ¶ 5–6; PRSOF ¶5–6. The standard plan was called "Core" coverage. DSOF ¶ 5; PRSOF ¶ 5. Under Core coverage, an employee who could no longer work due to a long-term disability could collect 50% of his regular salary in LTD benefits. DSOF ¶ 5; PRSOF ¶ 5. Defendant paid all the costs associated with Core coverage so that employees could enroll at no personal cost. DSOF ¶ 6; PRSOF ¶ 6.

But employees could also expand their LTD coverage by electing a plan called "Buy-Up Option 2." DSOF ¶ 5; PRSOF ¶ 5. Under Buy-Up Option 2, an employee who had suffered a long-term disability would be entitled to *60%* of his regular salary *and bonus*. *Id.* An employee's bonus for purposes of calculating LTD benefits would be the non-salary cash incentives the employee "earned" in the year preceding the year in which the employee enrolled for benefits. DSOF ¶ 44; PRSOF ¶ 44. For example, if an employee wanted to be insured in 2016, he would enroll in the fall of 2015, and his bonus would be based on the non-salary cash incentives he earned in 2014. *Id.* Buy-Up Option 2 cost more than Core coverage, and an employee had to make "post-tax contributions" out of his own pocket toward this extra cost. DSOF ¶ 41; PRSOF ¶ 41.

Throughout his tenure with Defendant, Plaintiff always enrolled in Buy-Up Option 2, and he remained so enrolled in 2016. DSOF ¶¶ 10–11; PRSOF ¶¶ 10–11.

Plaintiff has long suffered from back injuries. DSOF ¶ 1. Between 2014 and 2016, those injuries became significantly worse. DSOF ¶ 18–19. Plaintiff alleges that he began considering during this time whether he should retire and begin claiming his LTD benefits in lieu of his regular compensation. Pl.'s Statement of Additional Facts ("PSAF"), ¶¶ 1–2, ECF No. 35-1. Plaintiff alleges that he consulted written materials describing the benefits available under Defendant's Plan and had multiple conversations with Defendant's human resources representatives to determine precisely how much money he would receive in his LTD benefit payments were he to stop working. Compl. ¶¶ 13–14, ECF No.1.; PSAF ¶¶ 1–2.

Critically for this case, Plaintiff alleges that the written materials combined with his conversations with human resources representatives lead him to understand that almost 72% of his benefit payments would be nontaxable upon receipt. PSAF ¶¶ 1–2; Compl. ¶ 12–14. A Summary of Plan Description ("SPD") disseminated in June 2016 provided, "[t]he portion of LTD benefits paid based on company-paid premiums is taxable. Portions of the benefit elected by the employee on a post-tax basis are non-taxable upon receipt of the benefit." DSOF ¶¶ 40–1; PRSOF ¶¶ 40–1. Because Plaintiff had spent post-tax dollars to upgrade his coverage from Core to Buy-Up Option 2, which increased his benefit entitlement by 10% of his salary and 60% of his bonus, Plaintiff believed that the portions of his benefit payment equal to 10% of his salary and 60% of his bonus would be nontaxable. PSAF ¶¶ 1–2; Compl. ¶ 14. Plaintiff's salary in 2016 was $175,000, and 2014 paystubs reflected bonus payments totaling $345,042.62. DSOF ¶¶ 50, 52; PRSOF ¶ 50, 52; Compl. ¶ 22. Accordingly, Plaintiff believed he was entitled to a total annual benefit payment of $312,026, of which he would receive the $17,500 representing 10% of his salary and the $207,026

representing 60% of his bonus tax-free.  Compl. ¶ 22.  Plaintiff alleges that he checked his calculations with Defendant's human resources representatives and that those representatives consistently confirmed his calculations.  Compl. ¶ 14; PSAF ¶¶ 1–2.

Plaintiff stopped working in May of 2016 and applied for LTD benefits.  DSOF ¶ 38; PRSOF ¶ 38.  The plan administrator for Defendant's Plan, Aetna Life Insurance Company, approved Plaintiff's application.  DSOF ¶¶ 9, 49; PRSOF ¶¶ 9, 49.

Using data supplied by Defendant, however, Aetna determined that Plaintiff was entitled to an annual benefit payment of only $301,131.87 and that only 25% of the benefit payment was nontaxable.  DSOF ¶¶ 48–51; PRSOF ¶¶ 48–49.  According to Defendant's data, although Plaintiff had been paid bonuses totaling over $345,000 in 2014, he had *earned* only $301,131.87 of those bonuses in 2014.  DSOF ¶¶ 51–52.  And while Plaintiff had made post-tax *contributions* toward the costs of Buy-Up Option 2 coverage, these contributions had covered only 25% of the total cost of Plaintiff's insurance.  DSOF ¶¶ 34–37; 48-49.  Defendant had paid for the remaining 75%, rendering 75% of Plaintiff's benefits taxable upon receipt.  *Id.*[1]

Surprised by the diminished after-tax value of his benefit payment, Plaintiff began pursuing a series of appeals to Aetna and Defendant disputing their calculation of his benefit.  DSOF ¶¶ 55–59; PRSOF ¶¶ 55–59.  Aetna issued its final decision denying Plaintiff's appeal on Jun 7, 2018.  DSOF ¶ 63; PRSOF ¶ 63.

---

[1] Defendant applied the Internal Revenue Service's "three-year look back" rule to calculate the proportion of the cost of coverage that Plaintiff had paid for with post-tax dollars and to determine the portion of Plaintiff's benefit payment that would be nontaxable upon receipt. DSOF ¶¶ 34–35; *see also* 26 C.F.R. § 1.105-1.  The Court expresses no opinion as to the correctness of Defendant's understanding of tax law or application of the three-year lookback rule, as those questions are not properly before the Court.  As discussed below, the only question before this Court is whether Defendant's communications with Plaintiff make Defendant liable to Plaintiff under the provisions of ERISA.

4

### b. Procedural History

Plaintiff filed a Complaint against Defendant on January 27, 2020, alleging that Defendant had violated ERISA by either failing to fulfil the terms of its Plan or misrepresenting the terms of its Plan. *See* ECF No. 1. Plaintiff demanded a jury trial. *Id.* Defendant filed an Answer on March 13, 2020, denying liability and asserting a variety of affirmative defenses. *See* ECF No. 7.

On January 29, 2021, after the close of discovery, Defendant moved for summary judgment against Plaintiff on all counts. *See* ECF No. 31. Defendant also moved to strike Plaintiff's demand for a jury trial. *Id.* Plaintiff responded to Defendants motions on February 12, 2021, and Defendant filed a reply brief in further support of its motions on March 1, 2021. *See* ECF No. 35; ECF No. 39. Defendant's motion for summary judgment and motion to strike are now before this Court.

### III. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). And a fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324

(internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV. ANALYSIS

In his Complaint, Plaintiff alleges two errors in his benefits payments. First, Plaintiff alleges that his benefit payments are based on a miscalculation of his bonus. Second, Plaintiff alleges that Defendant has subjected an excessively large portion of Plaintiff's benefit payment to taxation.

But Plaintiff has offered no argument for the viability of his claim that his bonus has been miscalculated, so Plaintiff has abandoned and waived that claim. *See Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd,* 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it.").[2] Accordingly, the

---

[2] Even if not for waiver, the record evidence would require the Court to enter summary judgment in favor of Defendant. The Parties agree that Plaintiff's benefit payments should be calculated based on the bonuses he "earned" in 2014. Compl. ¶ 21; DSOF ¶ 44; PRSOF ¶ 44. Plaintiff states that he "received" $345,042.62 in bonuses in 2014. JA 560:8–15. But Plaintiff concedes that he sometimes would earn a bonus in one year but would not receive payment until the next year. JA 560:23–561:3. And Defendant has produced affidavits from its human resources personnel tabulating the bonuses Plaintiff earned in 2014. JA 547. Because Plaintiff offers no evidence that his entire $345,042.62 bonus payment was *earned* in 2014 nor any explanation why Defendant's tabulation should be disregarded, Defendant has met its burden to demonstrate that there is no genuine dispute as to the calculation of Plaintiff's bonus. *See Daniels*, 776 F.3d

6

Court need address only whether Plaintiff's claim regarding the taxability of his benefit payment survives summary judgment.

Plaintiff presents his claim under two of ERISA's causes of action, § 502(a)(1)(B) and § 502(a)(3), and demands a jury trial.[3] The Court will address each cause of action in turn and then address Plaintiff's jury trial demand.

### a. Plaintiff's claim under ERISA § 502(a)(1)(B)

Subsection 502(a)(1)(B) authorizes an employee to sue to "recover benefits due," "enforce his rights," or "clarify his rights…under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Under this subsection, federal courts must construe the employee benefits plan at issue and enforce its terms as they are written. *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 902 (3d Cir. 1995). Relief under this subsection is appropriate only if it is warranted by the text of the plan. *Id.*

When an employee benefits plan gives the plan administrator discretionary authority to construe and apply the terms of the plan, the court must review the administrator's interpretation and application with some deference. *Dowling v. Pension Plan For Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017). The court defers to an administrator's interpretation of unambiguous plan terms so long as the interpretation is "reasonably consistent"

---

at 192 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient.").

[3] Plaintiff's Complaint cites only one statutory provision as a cause of action. *See* Compl. (ECF No. 1) ¶ 27. But Plaintiff's Complaint alleges facts related to verbal misrepresentations that would give a defendant notice that Plaintiff intended to sue under ERISA's equitable cause of action as well. *See id.* ¶¶ 12-14; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (explaining that notice pleading requires pleading enough facts to give the defendant fair notice of the claim against it).

with the plan's text. *Id.* Where the plan's text is ambiguous, the court defers to the administrator's interpretation so long as the interpretation is not "arbitrary and capricious." *Id.*

Text is ambiguous if it is alternative interpretations that are both reasonable. *Id.* Whether the plan's text is ambiguous and whether deference is appropriate are questions of law that a court may decide at summary judgment. *Id.* (affirming the district court's entry of summary judgment on the basis of deference to the plan administrator's interpretation of an ambiguous term).

Here, the Parties agree that the Plan contains a provision delegating interpretive discretion to Aetna, the plan's administrator. DSOF ¶ 46; PRSOF ¶ 46. They also agree that the Plan terms at the center of their dispute are the following: "Portions of the benefit elected by the employee on a post-tax basis are non-taxable upon receipt of the benefit." Compl. ¶ 12; Pl.'s Br. Opp'n Summ. J. ("Pl.'s Br.") at 7, ECF No. 35; Def.'s Br. Supp. Mot. Summ. J. ("Def.'s Br.") at 2, ECF No. 31-1; DSOF ¶ 57; PRSOF ¶ 57.[4]

---

[4] Neither party has presented the text of Defendant's benefit plan itself. Instead, the Parties rely on the Summary of Plan Description ("SPD") as a stand in for the Plan. *See* DSOF ¶ 4 (referring to the SPD as the "Plan."); PRSOF ¶ 4 (not disputing Defendant's characterization of the SPD); *see also* Def.'s Br. in Support of Motion for Summary Judgment (ECF No. 31-1) at 2 (describing excerpt from SPD as "[t]he plan terms"). But the Supreme Court has made clear that the terms of an SPD are *not* terms of the plan itself and that the terms of an SPD are not entitled to the same legal significance as the terms of the plan itself. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) ("[S]ummary documents, important as they are, provide communication with beneficiaries *about* the plan, but…their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B).").

Ordinarily, this failure of evidence would warrant entry of summary judgment in favor of Defendant, for a plaintiff suing under § 502(a)(1)(B) bears the burden of demonstrating that his entitlement to relief stems from the Plan's text. *Unisys*, 58 F.3d at 902 ("[A]ny retiree's right to…benefits under a plan can only be found if it is established by the terms of the ERISA-governed employee benefit plan"); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011) ("[W]e cannot agree that the terms of statutorily required plan summaries… may be enforced under § 502(a)(1)(B) as the terms of the plan itself.") (internal parentheses omitted). Because the Parties seem to agree that the SPD's text accurately reflects the terms of Defendant's employee benefits plan, however, and since that SPD's text compels the entry of summary judgment in favor of Defendant regardless, the Court will proceed to evaluate the Parties' excerpt of the SPD as though it were the text of the Plan itself.

This provision of the Plan is ambiguous. In context of a plan that provides different tranches of benefits at different additional costs, the word "portions" could be interpreted to mean "*the* portions" of Plaintiff's benefit beyond Core coverage that he elected to purchase with post-tax dollars. Alternatively, however, "portions" could be interpreted to mean "*some* portions" of Plaintiff's benefit payments that are related to, but not coextensive with, the portions of Plaintiff's benefit he purchased with post-tax dollars.

While both of these interpretations are reasonable, Aetna chose the former and relied on a consultant's evaluation of tax law and IRS guidance to supply the precise portion that was nontaxable. DSOF ¶ 49; PRSOF ¶ 49. This Court cannot say that the process or result of Aetna's interpretation of this ambiguous plan term was arbitrary and capricious, so the Court must defer to Aetna's interpretation. Plaintiff did receive a portion of his benefit unreduced by taxation—specifically, a portion equal to 25% of his payment. DSOF ¶ 49; PRSOF ¶ 49. Accordingly, there is no genuine dispute that Plaintiff got all he was entitled to under the terms of the Plan, so the Court must enter summary judgment in favor of Defendant on Plaintiff's § 502(a)(1)(B) cause of action.

### b. Plaintiff's claim under ERISA § 502(a)(3)

Subsection 502(a)(3) authorizes an employee to obtain "other appropriate equitable relief" necessary "to redress" ERISA violations or "to enforce any provisions of the terms of the plan." 29 U.S.C. § 1132(a)(3). Unlike § 501(a)(1)(B), §501(a)(3) allows plaintiffs to enforce promises made outside the text of a plan. *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 308 (3d Cir. 2008). Specifically, when an employer misrepresents the benefits available under its plan and harms an employee in doing so, § 502(a)(3) permits that employee to seek relief through a claim of equitable estoppel. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.

1994); *see also Pell*, 539 F.3d at 308 n.7.  To make out a claim under § 502(a)(3), an employee must prove (1) the employer's misrepresentation was material; (2) the employee reasonably relied on the employer's misrepresentation; (3) the employee suffered injury; and (4) "extraordinary circumstances" exist to justify equitable relief.  *Pell*, 539 F.3d at 300-01.

Plaintiff argues that Defendant misrepresented the terms of its plan in two ways.  First, Defendant's SPD for 2016 allegedly contained statements that misrepresented the taxability of benefit payments under Buy-Up Option 2.  Pl.'s Br. at 13.  Second, Defendant's human resources representatives allegedly misrepresented the taxability of Plaintiff's benefit payments in their conversations with Plaintiff.  *Id.*

From the outset, the Court notes that Plaintiff cannot rely on the 2016 SPD to support his claim under § 502(a)(3).  Defendant has produced evidence demonstrating that it did not disseminate the 2016 SPD until the middle of June 2016, and Plaintiff has offered no evidence or argument disputing this fact.  Joint Appendix ("JA") 583:10–14, ECF No. 32.  Plaintiff also concedes that he enrolled in Buy-Up Option 2 in the Fall of 2015 and retired on May 23, 2016.  DSOF ¶¶ 21, 38; PRSOF ¶¶ 21, 38.  Because Plaintiff had already retired by the time the 2016 SPD was released, the 2016 SPD could not have influenced his decision to enroll in benefits or to retire.  Accordingly, the Court need only determine whether Plaintiff's alleged conversations with Defendant's human resources representatives are adequate to carry his claim under § 502(a)(3) through summary judgment.

### i. Material misrepresentation

A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about his benefits.  *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 76 (3d Cir. 2001).  Misrepresentations are material not only

10

if they influence an employee's decision to enroll in benefits but also if they influence an employee's decision to retire and begin collecting his benefits. *Pell*, 539 F.3d at 300–01 (finding an employer's misrepresentations regarding the calculation of an employee's pension benefit to be material because they influenced an employee to consider retiring early).

Here, Plaintiff alleges that Defendant's human resources representatives specifically misrepresented how his benefit payment would be taxed. JA 562:21–565:25. In his deposition, Plaintiff testified that these officials "specifically said" that "50 percent of my salary would be taxable. But the 10 percent of my salary would be tax-free, and 60 percent of my bonus would be tax-free." JA 565:18–25. These misrepresentations, if they were in fact made, would cause an employee to overestimate, substantially, the amount of after-tax income he would receive were he to retire, and this overestimation would likely cause a reasonable employee to misjudge if and when he should retire. Like the misrepresentations regarding pension calculations in *Pell*, then, Defendant's misrepresentations regarding the taxability of Plaintiff's benefit payments are material.

### ii. Reasonable Reliance

When an individual has apparent authority to determine an employee's benefits, it is reasonable for an employee to rely on that individual's statements about the employee's benefits. *Pell*, 539 F.3d at 301-02 ("[W]hen an individual acts with apparent authority to determine an employee's status in relationship to a benefit plan, the plan fiduciary can be responsible for the individual's material misstatements."); *see also Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 985, 989 (3d Cir. 1995) (finding it reasonable for an employee to rely on a letter detailing the

11

calculation of his pension benefit issued by the "Director of Employee Compensation and Benefits.").

Here, Plaintiff alleges that the individuals who misrepresented the taxability of his benefits were Defendant's human resources representatives. JA 562-65. In its 2013 SPD, Defendant specifically directed employees like Plaintiff to contact the human resources department if they "have difficulty understanding any part" of the SPD. JA 3; *see also* JA 5. Given that Defendant specifically instructed its employees to take their questions regarding benefits to the human resources department, it was reasonable for Plaintiff to rely on the statements human resources representatives made to him about his benefits.

### iii. Injury

An employee suffers an injury when he makes a disadvantageous decision to enroll in or to begin collecting benefits. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 229 (3d Cir. 2009). To prove injury, however, an employee must show he could have pursued an alternative course of action that would have left him in a better position. *Pell*, 539 F.3d at 303; *Smith v. Hartford Ins. Grp.*, 6 F.3d 131, 137 (3d Cir. 1993). A plaintiff need not show that he had the alternative ready at hand, but he must at least present evidence showing a reasonable likelihood that he could have obtained an alternative had he tried. *Compare Smith*, 6 F.3d at 137 (3d Cir. 1993) (finding no detrimental reliance where plaintiffs alleged they would have searched for alternative coverage but provided no evidence that they would have been eligible for alternative coverage) *with Pell*, 539 F.3d at 303 n.5 (finding detrimental reliance because the record

demonstrated that plaintiff was a highly qualified candidate that likely could have secured an alternative job).

Here, Plaintiff could have been injured in two different ways. First, it is possible that Plaintiff suffered injury in deciding to enroll in Buy-Up Option 2. Second, it is possible that Plaintiff suffered injury in deciding to retire and begin collecting benefits in 2016.

Defendant has met its burden to show there is no genuine dispute as to whether Plaintiff was injured in his decision to enroll. Plaintiff testified that, "had [he] known how [his benefits] actually would have been taxed, [he] would have gone and bought a policy in the open market where [he] would have been paying with after-tax dollars." JA 408:19–25. But Plaintiff also admitted that he never owned or applied for any alternative disability insurance, JA 555:6–11, and that he did not even know whether he would qualify for private insurance given his history of back injuries, S-JA 410:18–23. As in *Smith*, Plaintiff's mere suggestion that he would have looked for alternative coverage unsupported by any evidence that he likely would have been able to obtain alternative coverage is insufficient to survive summary judgment. *Smith*, 6 F.3d at 137.

But there remains a genuine issue of material fact as to whether Plaintiff suffered injury in deciding to retire in 2016. Plaintiff has testified that, between 2014 and 2016, Plaintiff had series of conversations with human resources representatives to determine whether he should undergo a surgery that presented the risk of leaving him permanently disabled. JA 561b–562. Plaintiff was concerned that, "if the surgery went badly," he might not be able to "make ends meet" on his disability payments. JA 561b:20–562:2. Plaintiff allegedly had his "most detailed conversations…with HR" as to "what [he] would be paid" in disability benefits so that he could decide "whether surgery was worth it or not." JA 562:3–9.

It appears from the record before this Court that, when Plaintiff spoke to these human resources representatives in 2016, he had a choice between continuing to work and retiring early. By choosing to retire, Plaintiff forwent an opportunity to continue receiving his regular compensation and permanently locked in the after-tax value of his disability benefits. At trial, Defendant may convince a factfinder that Plaintiff could not have continued working or that continuing to work would not have left Plaintiff in a better position. At this stage, however, Plaintiff's deposition testimony presents a genuine dispute as to whether he suffered injury, so this Court cannot enter summary judgment in Defendant's favor. *Cf. Baker v. Lukens Steel Co.*, 793 F.2d 509, 512–13 (3d Cir. 1986) (denying summary judgment where employees supplied sworn statements that they had postponed retirement in reliance on their employer's false assurances that they would be eligible for certain retirement benefits).

### iv. Extraordinary Circumstances

Extraordinary circumstances have been found to exist in a variety of factual circumstances. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) ("We have never clearly defined 'extraordinary circumstances,' relying instead on case law to establish its parameters."). One such circumstance is when a defendant persistently misrepresents the terms of its plan despite a plaintiff's repeated and diligent attempts to verify the terms of the plan. *Compare Kurz*, 96 F.3d at 1554 (finding no extraordinary circumstances where each plaintiff relied on a solitary misrepresentation made during each plaintiff's retirement interview) *with Smith*, 6 F.3d at 142 *and Pell*, 539 F.3d at 304 (finding extraordinary circumstances where plaintiffs repeatedly inquired into defendants' misrepresentations and defendants repeatedly affirmed them).

In this case, there remains a genuine dispute regarding whether extraordinary circumstances exist. Plaintiff stated under oath that he had multiple conversations with

14

Defendant's human resources representatives to determine the taxability of his benefit payments between 2014 and 2016. S-JA 384:10–20; JA 561b:15–565:25. According to Plaintiff's testimony, Defendant's human resources representatives repeatedly and consistently assured him that he would receive the portion of his benefit payment exceeding 50% of his salary tax-free. *Id.* Although it remains unclear precisely how many conversations Plaintiff had with Defendant's human resources representatives, Plaintiff's testimony, construed in the light most favorable to him, suggests that his conversations with human resources were numerous, detailed, and persistent over a three-year period. *Id.* If a factfinder finds that they were, then extraordinary circumstances would exist justifying equitable relief.

Defendant argues that the Court should disregard Plaintiff's references to his conversations with human resources representatives because Plaintiff cannot identify the specific individuals to whom he spoke or the specific times at which they spoke. Def.'s Br. at 12-13. But, at summary judgment, a court asks only whether the nonmovant has produced evidence upon which a jury *could* reasonably find for the nonmovant. *Daniels*, 776 F.3d at 192. Although Plaintiff could not remember the names of all the individuals with whom he spoke, he did specify that he spoke to his boss and that most of the human resources officials with whom he spoke were stationed in Defendant's Hopewell, New Jersey, office. JA 562; 564–65. Were a factfinder to find this testimony credible, the factfinder *could* be persuaded to find in Plaintiff's favor. Accordingly, summary judgment remains inappropriate.[5]

---

[5] Plaintiff has also presented evidence suggesting that Defendant may have known it was misrepresenting the taxability of its benefits and chose not to correct its misrepresentations. Suppl. JA ("S-JA") 391-392, ECF No. 35. While this evidence might indicate bad faith conduct that would also support a finding of extraordinary circumstances, *see Kurz*, 96 F.3d at 1553, the Court need not address it because Plaintiff has survived summary judgment on this issue on other grounds.

15

### c. Demand for Jury Trial

Because Plaintiff cannot sustain a claim under ERISA § 502(a)(1)(B), the Court need not address Plaintiff's arguments about the availability of jury trials for claims brought under that provision. And it is well-settled that jury trials are not available for claims brought under ERISA § 502(a)(3). *See Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 79 n.10 (3d Cir. 2012) ("Because ERISA § 502(a)(3) authorizes only 'equitable relief,' no right to a jury trial attaches under the Seventh Amendment."). Accordingly, Plaintiff has no right to a jury trial, and his demand for a jury trial must be stricken.

## V. CONCLUSION

Defendant has sustained its burden to show that there is no genuine dispute of material fact regarding some of the issues in this case. Because Plaintiff has abandoned the issue, Defendant has succeeded in showing that there is no genuine dispute regarding the proper valuation of Plaintiff's 2014 bonus for purposes of calculating his entitlement to benefits. The correct valuation for that purpose is $301,131.87. Defendant has also met its burden to demonstrate that Plaintiff cannot move forward under § 502(a)(1)(B) as a matter of law because the plan administrator's interpretation of Defendant's plan was not arbitrary and capricious.

Plaintiff's claim under § 502(a)(3), however, survives summary judgment because there remains a genuine dispute of material fact as to whether Defendant's human resources representatives repeatedly misrepresented the terms of the Plan to Plaintiff. Plaintiff has presented evidence upon which a factfinder could find that Plaintiff had a choice to continue working in 2016; that he forwent the opportunity in reliance on misrepresentations made by Defendant's human resources representatives; and that he relied on Defendant's misrepresentations only after diligently seeking to verify them.

Because Plaintiff now seeks only equitable relief under § 502(a)(3), he is not entitled to a jury trial, and his demand for one must be stricken.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge